**Sandra KEY, Appellant,**

v.

**The COMMISSIONERS COURT OF MARION COUNTY,**
**Texas, Appellee.**

**No. 9535.**

Court of Appeals of Texas,
Texarkana.

March 4, 1987.

Al T. Davis, Moseley & Davis, Associates, Marshall, for appellant.

Tony Hileman, Jefferson, for appellee.

PER CURIAM.

Sandra Key appeals a summary judgment granted to the Commissioners Court of Marion County. She claims in her only point of error that the trial court erred by finding that no genuine issue of material fact exists in this case.

Sandra Key filed suit against the Commissioners Court seeking a writ of mandamus ordering the court to rescind their approval of the transfer of a biannual publication named *The Jeffersonian* and control of the "Christmas Candlelight Tour"

from the Marion County Historical Commission to the Historic Jefferson Foundation. The Historic Jefferson Foundation is a Texas corporation chartered under the provisions of the Texas Non-Profit Corporation Act. It is a tax-exempt charitable organization and has been classified as a public foundation under Internal Revenue standards, but it is not a governmental agency. The Marion County Historical Commission is a state-created agency whose operation is overseen by the county commissioners court. Tex.Rev.Civ.Stat. Ann. art. 6145.1 (Vernon Supp.1987). At its regular meeting on December 27, 1984, the Historical Commission, by unanimous vote of those members present, transferred the projects in toto to the foundation.

On January 14, 1985, the Commissioners Court of Marion County approved the transfer when it was presented with the commission's annual report. No consideration was exchanged.

The petition for writ of mandamus was based on Tex. Const. art. III, § 52, art. XI, § 3. We quote the pertinent language from these sections:

> Sec. 52.(a) Except as otherwise provided by this section, the Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or *thing of value* in aid of, or to any individual, association or corporation whatsoever,.... (Emphasis added.)

> ....

> Sec. 3. No county, city, or other municipal corporation shall hereafter become a subscriber to the capital of any *private corporation or association, or make any appropriation or donation* to the same, or in any wise loan its credit; .... (Emphasis added.)

In a summary judgment review, the standard to be used is outlined in *Wilcox v. St. Mary's University of San Antonio*, 531 S.W.2d 589 (Tex.1975):

> 1. The movant for summary judgment ... has the burden of showing that there is no genuine issue of material fact

and that it is entitled to judgment as a matter of law.

2. In deciding whether or not there is a disputed material fact issue precluding a summary judgment, evidence favorable to the non-movant ... will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movants and any doubts resolved in their favor.

We must first determine the application of the phrase "thing of value" found in the constitutional article cited above. Our analysis has two parts: is the "thing of value" question an issue of material fact; and was the issue raised by the summary judgment proof?

The Commissioners Court points out in its brief that the language was designed to end the use of government money to profit private companies. However, the phrase has been used in case law only sparingly. In cases interpreting a criminal statute, "things of value" have included railroad tickets and various forms of free games in amusement arcades. *Turner v. State*, 372 S.W.2d 346 (Tex.Crim.App.1963); *Hoffman v. State*, 219 S.W.2d 539 (Tex.Civ.App.— Dallas 1949, no writ); *Hightower v. State*, 156 S.W.2d 327 Tex.Civ.App.—Dallas 1941, writ ref'd).

■ Applying the plain language of the constitution, we find that the question of whether these projects are a "thing of value" is an issue of a material fact.

We have reviewed the summary judgment proof contained in the various affidavits and exhibits attached to Key's response to the motion for summary judgment, and we find the response is sufficient to raise an issue of material fact of whether the projects were things of value.

The Commissioners Court also argues that a "public purpose" exception should be read into the cited constitutional articles. It contends that once the transfer was to a non-profit organization with the same stated goals as the commission, the transfer was in the public interest and therefore does not violate the constitutional ban. It cites cases which show that transfers of money to private corporations are permissi-

ble if the public purpose is accomplished through the transfer, even if a private interest is also benefited. *Barrington v. Cokinos*, 161 Tex. 136, 338 S.W.2d 133 (1960); *Davis v. City of Taylor*, 123 Tex. 39, 67 S.W.2d 1033 (1934); *Byrd v. City of Dallas*, 118 Tex. 28, 6 S.W.2d 738 (1928).

■ Each case cited is readily distinguishable from the present situation. These cases involve contractual agreements for services or property entered into by a governmental arm with private business. In this case we have no such contractual obligation and no retention of formal control. Had the Historic Jefferson Foundation obligated itself contractually to perform a function beneficial to the public, this obligation might be deemed consideration, and where sufficient consideration exists, Article III, § 52(a) of the Texas Constitution would not be applicable to the transaction.

The Commissioners Court brief quotes from Willatt, *Constitutional Restrictions on Use of Public Money and Public Credit*, 38 Tex.B.J. 413 (1975), at some length to support its argument that the "public purpose" doctrine properly applies here. However, that article summarizes its discussion of the subject by concluding that "to insure that the political subdivision receives its consideration, viz., accomplishment of the public purpose, the political subdivision must retain some degree of control over the performance of the contract." *Id.* at 422.

There has never been a requirement that every activity undertaken under the auspices of the State be directly operated by a State agency. However, the unifying theme of the cited cases shows that some form of continuing public control is necessary to insure that the State agency receives its consideration: accomplishment of the public purpose.

The judgment of the trial court is reversed, and the cause is remanded for a trial on the merits.